IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CYRIL PYLE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| OTIS ELEVATOR COMPANY, et al. | : | NO.  19-4283 |

### MEMORANDUM

ELIZABETH T. HEY, U.S.M.J.                                           June 17, 2020

Plaintiff Cyril Pyle brought suit against Otis Elevator Company ("Defendant" or "Otis") to recover damages for personal injuries allegedly caused by the misleveling of an elevator.  Presently before the court is Defendant's motion for summary judgment. For the reasons that follow, I will grant the motion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Except where stated, the following facts are not in dispute.  On August 19, 2017, while working as an emergency room technician at Aria-Jefferson Health Frankford ("Aria"), Plaintiff was injured while exiting an elevator because the doors opened before the elevator became level with the exiting floor surface.  See Complaint, Doc. 18 Exh. A (Doc. 18-4) ("Complaint") ¶ 6; Cyril Pyle Deposition, Doc. 18 Exh. D (Doc. 18-7) & Doc. 22 Exh. A (Doc. 22-3) ("Pyle Dep."), at 22, 59-65.[1]  On the day of the incident, Plaintiff had used the elevator to transport a patient to the fourth floor, and then returned to the elevator with an empty gurney that was "top-heavy" because it was raised up and

_____

[1] Pinpoint citations to deposition transcripts will be to the transcript pages.  Except where noted, other pinpoint citations will be to the court's ECF pagination.
    The elevator in question was identified as Unit 7.  See Robert Huff Deposition, Doc. 22 Exh. B (Doc. 22-4) ("Huff Dep."), at 73.

carrying a heavy oxygen tank.  Pyle Dep. at 58-62, 64, 66.  He took the elevator back to

the ground floor, and the doors opened normally.  Id. at 62.  He was positioned at the rear

of the elevator, and swung the gurney toward the right so as to make a left turn out of the

elevator into the hallway.  Id. at 62-63.  As he did so the gurney dropped to the right, and

he attempted to keep the gurney from toppling over to the right as he moved into the

hallway, causing him to pin or roll his ankle against a metal office door in the hallway

and thereby causing serious injury.  Id. at 63-66, 75.  Plaintiff testified that he was

looking up as he exited the elevator and did not observe a misleveling, id. at 62, 69-70,

80-81, but that he looked back while the doors were closing and saw the elevator "up off

the floor [by], like, six inches to one foot."  Id. at 88.

Plaintiff did not fill out an incident report on the day of his fall, and he told his

supervisor that he thought he had "twisted" his foot.  Pyle Dep. at 67-68.  Plaintiff

transported 48 more patients during the remainder of his shift, including some using the

same elevator.  Id. at 65, 67.  Plaintiff did not see the elevator mislevel for the rest of his

shift, id. at 80-81, 84, nor had he ever observed it mislevel prior to the incident.  Id. at 51,

90-91.  Plaintiff sought medical attention four days after the incident, id. at 95, and he

returned to work for two weeks wearing a boot.  Id. at 109.  On December 5, 2017, he

was diagnosed with a broken bone and torn ligament.  Id. at 115.

Defendant performed maintenance on the elevator pursuant to a Master Agreement

between it and Aria.  See Master Agreement and Otis Maintenance, Doc. 18 Exh. E (Doc.

18-8) ("Contract").  The Contract includes a nine-page maintenance agreement, entitled

"Otis Maintenance," by which Defendant agreed to perform regular inspection and

maintenance on elevators at the Aria facility.  Contract at OTIS 016-024.[2]  For example, the Contract calls for a preventive maintenance program including inspection, lubrication, adjustment, repair and replacement, periodic examination of safety devices and governors, and monthly maintenance.  Id. at OTIS 016, 018, 020.

Otis maintenance mechanic Robert Huff testified that he was responsible for servicing the elevator, and that his duties included checking the operation of the elevator, proper lubrications, and adjusting and replacing parts due to their condition or age.  Huff Dep. at 19, 28.  He testified that he never saw the Contract, and that Otis never gave him a written description of his duties regarding the servicing of the elevator.  Id. at 26, 29. He performed service on the elevator through a scheduling system set by his supervisor, id. at 32-34, 39, and he believed that his supervisor inspected the elevator a couple of times per year.  Id. at 34, 35.  Mr. Huff explained that as a maintenance mechanic he performed minor repairs and responded to service calls, which is different from a servicing technician who would repair malfunctions.  Id. at 74, 78, 84-85.  He testified that a basic inspection and test of an elevator's proper functioning consists of riding the elevator.  Id. at 42, 92, 103-04.  If he saw a problem, he would investigate even though it was not specifically assigned.  Id. at 41.  He never requested or submitted a schedule regarding maintenance of the units at Aria, and he never made an annual report regarding recommended maintenance.  Id. at 42-43.  Similarly, he was not aware of an Otis checklist of things to be performed on a monthly, quarterly, or annual basis.  Id. at 47-48.

---

[2]The contract referred to a "Scope of Work" attachment, which in turn referred to the work proposal cited above.  Contract ¶ 1 & Attachment Scope of Work, at OTIS 010.

Mr. Huff identified the elevator in question as a traction-type elevator built in the 1980's.  Huff Dep. at 68.  He testified that there are several systems involved in making it level with the adjacent floor, including an optical eye on the elevator car that reads the floor level, electrical contacts that relay the floor level, and relays in the control panel. Id. at 73, 79, 110-11.  He explained that the system required monthly cleaning of the optical eye using compressed air, and that three-to-six-month maintenance included cleaning, lubricating, checking the software, and making sure contacts were not burned, although Otis had no system for him to check when the last time the optical eye was checked or inspected.  Id. at 73-74.  He also explained that the elevator had an approximate six-inch door zone, meaning that the doors could open if the elevator was misleveled three inches above or three inches below the adjacent floor, but not more than that because the clutch has to be within reach of the doors to enable them to open.  Id. at 80-81.[3]  It would be considered a malfunction requiring a service call if the doors opened while the unit was not level with the floor.  Id. at 85.  A misleveling of the elevator could be caused by a problem with the contacts, relays, or optical eye, and such a problem "would not fix itself."  Id. at 113.

Mr. Huff testified that he learned about the alleged misleveling incident at issue the day before his deposition, and that he did not recall ever noticing a problem with the

---

[3]Mr. Huff testified that he estimated the size of door zone based on his experience. Huff Dep. at 82-83.  With respect to the clutch, or vane, he testified that "if the clutch can't grab the door, the door can't open," and also that "if you were plus or minus a couple inches either way, the clutch could still grab [the door] but after a certain, it would be too far."  Id. at 82.  On summary judgment, I accept Plaintiff's testimony that the elevator misleveled by a distance of six to twelve inches.

elevator's leveling.  Huff Dep. at 106.  He explained that if he noticed something unsafe or unreliable, he had complete authority to lock out the unit and prevent it from being used.  Id. at 113-14. He also stated that if the elevator functioned adequately when inspected, he could not guarantee that it would be safe the next day or week.  Id. at 115-16.

Otis maintenance supervisor Joseph Caperna, Mr. Huff's direct supervisor, testified that the Contract required Defendant to provide preventative maintenance to maintain the elevator's performance and reliability, and that he was responsible for setting the maintenance schedule.  Joseph Caperna Deposition, Doc. 22 Exh. C (Doc. 22-5) ("Caperna Dep."), at 8, 25, 27.  He testified that Pennsylvania's elevator code requires leveling with an adjacent floor to within one-half inch, id. at 52-53, but he believed that the elevator had a four-inch door zone, meaning the doors could open if the elevator was misleveled up to two inches in either direction from the adjacent floor, and that the maximum door zone was determined by the location of the clutch.  Id. at 77-79.  He stated that there was nothing unusual with the elevator prior to Plaintiff's incident, id. at 40, and that an elevator could mislevel on one occasion and then work properly thereafter depending on factors such as the temperature in the machine room, the humidity in the building, and the building voltage to the motor generator.  Id. at 79-80.

The record also includes Defendant's maintenance reports for the elevator for the period from July 27 through December 22, 2017.  See Maintenance Reports, Doc. 22

Exh. E (Doc. 22-7), at Otis 0120-0186 ("Maintenance Reports").[4]  These records are difficult to understand, but they do not appear to show service calls or maintenance related to elevator misleveling during this time, nor do they memorialize the incident related to Plaintiff's fall on August 19, 2017.  To the extent the Maintenance Reports reflect work performed on the elevator (Unit #7) during the period immediately before and after Plaintiff's incident, they appear to indicate "Work Compl." dates of July 27, 2017 (Otis 0109-0114), August 2, 2017 (Otis 0115-0122), August 4, 2017 (Otis 0123-0126), August 8, 2017 (Otis 0127), August 18, 2017 (Otis 0128), and September 5, 2017 (Otis 0129-0132).  For example, the August 2 and 4 maintenance records contains remarks including "Contlr Maint-Tr," "Sel Clean & Lub," and "Brake Maintenan."  Otis 0115, 0120, 0123.  The records show a service call on August 8 indicating that the door gibs were about to fall off, and that Mr. Huff repaired the gibs and noted that a call button needed to be replaced.  Otis 0127.[5]

On August 19, 2019, Plaintiff commenced a personal injury action against Defendant in the Court of Common Pleas of Philadelphia County, alleging negligence

---

[4]Defendant also attached a set of Maintenance Reports for the period from July 27 through September 5, 2017, which includes additional Bates stamped pages Otis 0109-0119.  Doc. 18 Exh. F (Doc. 18-9).

[5]Neither party made reference in their briefing to the August 8 service call relating to the door gibs, and I therefore conclude that the call did not raise any issue as to the leveling of the elevator.  Mr. Huff had no specific recollection of the service call, and interpreted the service record to reflect that he repaired all the gibs, and he testified that the car operating panel button that needed to be replaced was unrelated to the elevator leveling.  Huff Dep. at 95-97, 98.  Mr. Huff also testified that on that same service call he replaced the door hanger rollers, which he described as the rollers that the doors hang on and that slide when the doors open and close, unrelated to the clutch mechanism.  Id. at 97-98 (referring to Otis 0128).

and vicarious liability arising from his fall while exiting the elevator.  Complaint, Claims I & II.  On September 17, 2019, Defendant removed the matter to this court.  Doc. 1.  The parties thereafter consented to proceed before a magistrate judge, see Docs. 11 & 12, and completed discovery.

On April 17, 2020, Defendant filed a motion for summary judgment arguing that Plaintiff has failed to meet his burden of producing evidence sufficient to establish a prima facie case of negligence as a matter of law, by failing to obtain an expert report to show that Defendant failed to reasonably inspect or maintain the elevator, and because Plaintiff cannot rely on the doctrine of res ipsa loquitur.  Doc. 18.  Plaintiff filed a response in opposition to the motion, and Defendant filed a reply.  Docs. 22 & 26.

## II.   LEGAL STANDARDS

### A.   Summary Judgment

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).[6]  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

---

[6]Anderson predated the 2010 Amendment to Rule 56.  However, the change in wording and location within the rule for the summary judgment standard did not alter the standard or caselaw interpretation of the standard.  Fed. R. Civ. P. 56 advisory committee's note to 2010 Amendments.

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute. . . ." Fed. R. Civ. P. 56(c)(1)(A), (B).  "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact."  Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000).  The evidence presented must be viewed in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 255.

## B.    Negligence Under Pennsylvania Law[7]

Under Pennsylvania law, the elements of negligence are (1) the existence of a duty or obligation recognized by law, (2) a breach of the duty, (3) a causal connection between the breach and the resulting injury, and (4) actual loss or damage.  See Krentz v. Consol. Rail Corp., 910 A.2d 20, 27 (Pa. 2006).  "The mere happening of an accident or an injury does not establish negligence nor raise an inference or a presumption of negligence nor make out a prima facie case of negligence."  Amon v. Shemaka, 214 A.2d 238, 239 (Pa. 1965); see also Mitchell v. Milburn, 199 A.3d 995, 1002 (Pa. Commw. 2018) ("In Pennsylvania, it is well-settled that the mere happening of an accident is no evidence of negligence.").

---

[7]In diversity cases such as this one where the claim rests on state law, the federal court applies the choice of law principles of the forum state.  Huber v. Taylor, 469 F.3d 67, 73 (3d Cir. 2006) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).  Here, Plaintiff is a resident of Pennsylvania, Pyle Dep. at 9-10, and the incident giving rise to the present lawsuit occurred in Pennsylvania, and it is undisputed that Pennsylvania courts would apply Pennsylvania law to this action.

"Duty, in any given situation, is predicated on the relationship existing between the parties at the relevant time." Pittsburgh Nat'l Bank v. Perr, 637 A.2d 334, 336 (Pa. Super. 1994) (quoting Morena v. South Hills Health Sys., 62 A.2d 680, 684 (Pa. 1983)). Relevant to the circumstances presented in Plaintiff's case, Pennsylvania law provides that an elevator company with a contract to regularly inspect and service an elevator has a duty that encompasses injuries caused by any negligence arising from its performance under the contract. See, e.g., Evans v. Otis Elev. Co., 168 A.2d 573, 576 (Pa. 1961) ("The orbit of [the elevator company's] duty to third persons is measured by the nature and scope of his contractual undertaking. . . ."). "[A] company that contracted to inspect its customer's elevator could be liable in tort to an employee of the customer whose injury resulted from the company's negligent performance of its contractual obligation to inspect the elevators, regardless of any privity of contract." Farabaugh v. Pa. Turnpike Comm'n, 911 A.2d 1264, 1283 (Pa. 2006); see also Evans, 168 A.2d at 576 ("[I]f [the elevator company] undertook to inspect the elevator at regular intervals, and, if the elevator was in a defective or dangerous condition discoverable by reasonable inspection, [it] would be liable to third persons, regardless of any privity of contract, who might be injured by [a] failure to properly perform its contractual undertaking of inspection.").

## III.  **DISCUSSION**

Here, the Contract sets forth Defendant's obligations, and the parties do not dispute that Defendant had a duty to reasonably inspect and maintain the elevator.  See Doc. 18-8.  The dispute raised by Defendant's motion is whether there is sufficient

evidence to present to a jury that Defendant breached that duty.  Plaintiff states that the above-recited facts meet that burden, because "[a] lay juror can understand the issue and pass judgment when an elevator malfunctions in such an obvious way as to not level with the floor.  Every person knows that such mis-leveling is a hazard meant to be avoided by proper maintenance."  Doc. 22-2 at 8-9.  Defendant argues that Plaintiff has failed to meet his burden of producing evidence sufficient to establish a prima facie case of negligence as a matter of law, by failing to obtain an expert report to show that Defendant failed to reasonably inspect or maintain the elevator, and because Plaintiff cannot rely on the doctrine of res ipsa loquitor.  I will address these issues in reverse order.

### A.    Doctrine of Res Ipsa Loquitur Does Not Apply

Defendant argues that Plaintiff cannot rely on the doctrine of res ipsa loquitur. Doc. 18-1 at 8-10; Doc. 26 at 1-4.  Plaintiff counters that the doctrine is applicable and precludes a grant of summary judgment.  Doc. 22-2 at 10-13.

The Pennsylvania Supreme Court has clarified that the doctrine of res ipsa loquitur in Pennsylvania is a "shorthand expression for circumstantial proof of negligence – a rule of evidence," rather than a rule of either procedure or substantive tort law.  Gilbert v. Korvette, Inc., 327 A.2d 94, 99 (Pa. 1974).  The doctrine "provides that a plaintiff may satisfy his burden of producing evidence of a defendant's negligence by proving that he has been injured by a casualty of a sort that normally would not have occurred in the absence of the defendant's negligence."  Chapman v. Chaon, 619 Fed. App'x 185, 187 (3d Cir. 2015) (quoting Quinby v. Plumsteadville Family Practice, 907 A.2d 1061, 1071 (Pa. 2006)).  Pennsylvania has adopted section 328D of the Restatement (Second) of

Torts, see Gilbert, 327 A.2d at 100; Quinby, 907 A.2d at 1071, which states that the doctrine applies when "(a) the event is of a kind which ordinarily does not occur in the absence of negligence; (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff." Restatement (Second) of Torts § 328D(1). There is no dispute that the Contract establishes Defendant's duty to third-parties such as Plaintiff, and therefore applicability of the doctrine turns on the first two prongs.

To satisfy the first prong, Plaintiff "must produce evidence which would permit the conclusion that it was more probable than not the injuries were caused by [Defendant's] negligence." Chapman, 619 Fed. App'x at 187-88 (quoting Micciche v. E. Elev. Co., 645 A.2d 278, 281 (1994)). That is, "a fall or misstep, without more, is not sufficient to warrant an inference of negligence under res ipsa loquitur." Id. at 188 (res ipsa loquitur not applicable to trip-and-fall because falling "is a familiar phenomenon in human experience attributable to losing one's balance, tripping or a myriad of other common causes not involving tortious conduct"). A plaintiff can satisfy the first prong either "by showing a 'fund of common knowledge from which laymen can reasonably draw the inference or conclusion of negligence,' or by presenting expert testimony." Stewart v. Thyssenkrup Elev. Corp., No. 1653, 2009 WL 2199341, at *8 (Phila. Ct. Com. Pl. June 23, 2009) (quoting Jones v. Harrisburg Polyclinic Hosp., 437 A.2d 1134, 1138 (Pa. 1981)).

The Pennsylvania Superior Court directly addressed the question whether res ipsa loquitur applies to injuries arising from the misleveling of an elevator in <u>Micciche v. Eastern Elevator Co.</u>, 645 A.2d 278 (Pa. Super. 1994).  The plaintiff doorman claimed that he tripped because an elevator misleveled, but the trial court declined to instruct the jury on the doctrine of res ipsa loquitur.  In affirming, the Superior Court held that the plaintiff failed to establish that elevator misleveling does not ordinarily occur in the absence of negligence.  <u>Id.</u> at 281.  Although the plaintiff made "various claims and assumptions" that the elevator had misleveled, the court reasoned that he failed to provide any evidence to support those claims, there were inconsistencies in his testimony and other evidence as to whether a misleveling had occurred, and he failed to rule out non-negligent causes.  <u>Id.</u>  "Although it is not necessary for [a plaintiff] to exclude all other possible causes of the accident, he still must present a case from which a jury may reasonably conclude the negligence was, more probably than not, that of [the defendant]."  <u>Id.</u> (quoting <u>Carney v. Otis Elev. Co.</u>, 536 A.2d 804 (Pa. Super. 1988)).  Additionally, the <u>Micciche</u> court reasoned that because the plaintiff testified that he had not checked to see if the elevator was level when he exited, his own negligence was "at least as probable as any other explanation that [he] tripped or lost his balance when he exited the elevator car."  <u>Id.</u> at 281-82.  Although <u>Micciche</u> was not a summary judgment case, it supports the conclusion that Plaintiff cannot rely on res ipsa loquitur as a means of meeting his burden of proof in this case.

Similarly, in <u>Laysears v. Schindler Elevator Corp.</u>, the district court applied Pennsylvania law and refused to give jury instructions on res ipsa loquitur where the

plaintiff alleged that she tripped due to a misleveled elevator maintained by the

defendant.  Civ. No. 94-3152, 1995 WL 568480, at *1 (E.D. Pa. Sep. 27, 1995) (Kelly,

J.).  In rejecting the plaintiff's post-trial motions, the district court concluded that she

failed to establish that elevator misleveling does not ordinarily occur absent negligence,

and that experts retained by both sides had testified that the mere existence of "elevator

misleveling does not demonstrate that the maintenance company was negligent."  Id. at

*4.  As the defense expert explained,

> A problem like [misleveling] can occur at any time.  There
> could have been someone there doing maintenance ten
> minutes before it occurred and walk out the door, and a
> problem like this can occur at any time.  A function of a piece
> of dirt falling from the air, falling between a contact or in a
> moving part of a relay, can cause that relay to malfunction.

Id.  The district court also found that the plaintiff failed to demonstrate that there were no

other possible causes for the misleveling or plaintiff's fall.  Id. at *4-5.  The court

reasoned in this regard that the plaintiff's expert made no attempt to explain why the

elevator had misleveled, and the plaintiff's own testimony indicated that she had not

observed the misleveling between the elevator and floor, and that she was in a hurry

when she entered the elevator.  Id.  Like Micciche this was not a summary judgment case,

but it similarly supports the conclusion that res ipsa loquitur does not apply here.

Plaintiff argues that "it is clear that an elevator does not mis-level by

approximately six (6) inches absent negligence," reasoning that "millions of people use

elevators each date [sic] without much thought and have a reasonable expectation that

such elevators will function normally without being mis-leveled by several inches upon

entry." Doc. 22 at 12. However, I find <u>Micciche</u> and its related cases persuasive. Like the plaintiff in <u>Micciche</u>, Plaintiff has provided no evidence showing that an elevator cannot mis-align absent negligence on the part of an elevator maintenance company. In the absence of such evidence, Plaintiff has failed to meet the first res ipsa loquitor prong.

It follows from the reasoning of these cases that Plaintiff also cannot meet the second prong of res ipsa loquitur, namely that he cannot rule out other causes for the misleveling incident. Additionally, in <u>Chapman v. Chaon</u>, a case that did not involve an elevator mishap, the plaintiff alleged that his fall was the result of the negligence of a construction company and its employee. 619 F. App'x 185 (3d Cir. 2015). Relying on <u>Micciche</u>, the Third Circuit held that the district court properly granted the defendants' motion for summary judgment where the plaintiff failed to exclude other possible causes and could therefore not rely on res ipsa loquitur. <u>Id.</u> at 189. And in another case involving an elevator, <u>Pace v. Mainstay Suites Hotel</u>, the plaintiff brought suit against an elevator service company and property owner alleging that when he "was half-way outside of the elevator in his motorized wheelchair, the elevator door 'slammed' into his right forearm which was dangling from the side of the wheelchair," causing injury. Civ. No. 06-5166, 2008 WL 4861507, at *1 (E.D. Pa. Nov. 7, 2008) (Stengel, J.). The court relied on <u>Micciche</u> as the source of Pennsylvania law on the question of whether res ipsa loquitur allows cases with unexplained elevator malfunctions to go to the jury, and granted summary judgment to the defendants. "Although it was not necessary for Mr. Pace to exclude all other possible causes, he still must have presented a case from which a jury may have reasonably concluded that the negligence was, more probably than not

that of one or both of the defendants."  2008 WL 4861507, at *8 (citing <u>Micciche</u>, 645 A.2d at 281).  As will be discussed more fully in the next section, Plaintiff's failure to obtain an expert report is significant because it leaves untested the possibility that the incident involving the elevator may have occurred for reasons that have nothing to do with negligence on the part of Defendant.

Moreover, as was the case in <u>Micciche</u>, it is possible that Plaintiff lost his balance on his own, in whole or in part.  Plaintiff testified that he pushed the gurney off the elevator while looking up and that he did not notice a misleveling as he exited, Pyle Dep. at 62, 69-70, 80-81, and that the gurney was in a raised-up position and carried a heavy oxygen tank, making it "top heavy."  <u>Id.</u> at 58-62, 64, 66.  As a result, even assuming that the elevator opened before it was level with the floor, Plaintiff cannot rule out that his own actions in exiting the elevator and immediately turning the top-heavy gurney may have caused or contributed to the incident.

Finally, Plaintiff has not identified an elevator misleveling case where the doctrine was applied, and instances where res ipsa loquitur has been applied under Pennsylvania law against elevator maintenance contractors involve greater evidence of negligence than Plaintiff has provided here.  For example, in <u>Carney</u>, the Pennsylvania Superior Court affirmed a verdict in the plaintiff's favor because the plaintiff established the elements of res ipsa loquitur.  536 A.2d 804.  The plaintiff was injured from the rapid closing of elevator doors that failed to release, and the plaintiff introduced evidence that the defendant had prior knowledge of the problem which resulted in her injuries, and that she herself was not negligent.  536 A.2d at 805-06.

Similarly, in <u>Williams v. Otis Elevator Co.</u>, upon which Plaintiff heavily relies, <u>see</u> Doc. 22 at 12, the plaintiff was injured when an elevator suddenly lurched as she exited, and the trial court instructed the jury that the defendant could be held liable on a theory of res ipsa loquitur.  409 Pa. Super. 486 (1991).  The plaintiff had introduced evidence of a steadily increasing number of reported problems on the elevator, as well as testimony from an expert witness that the defendant should have been alerted to the possibility of an uncorrected elevator defect due to the number of maintenance calls. This evidence was sufficient for the Superior Court to affirm the verdict for the plaintiff under a theory of res ipsa loquitur,[8] even though the expert had not identified the precise cause of the elevator's forward lurch.[9]  <u>Id.</u> at 490-91.

Also, in <u>Reyes v. Otis Elevator Co.</u>, a district court applying Pennsylvania law at the summary judgment stage allowed a plaintiff to proceed by way of res ipsa loquitur where the elevator she was riding in "dropped fast and stopped hard."  Civ. No. 13-4379, 2016 WL 6495115, at *5 (E.D. Pa. Nov. 2, 2016) (Schmehl, J.).  As in <u>Williams</u>, the

---

[8]The defendant in <u>Williams</u> argued that the plaintiff's reliance on expert testimony rendered the jury instruction on res ipsa loquitur erroneous, which the Superior Court rejected.  "While it is true that res ipsa loquitor is not warranted in the face of clear and indubitable proof of negligence, it is also true that a res ipsa loquitor charge is appropriate where the facts of a case lie somewhere in a grey zone" between no evidence of specific acts of negligence and evidence from which negligence can be clearly ascertained.  409 Pa. Super. at 494 (quoting <u>Smith v. City of Chester</u>, 515 A.2d 303, 306 (Pa. Super. 1986)).  Plaintiff's case does not fall within the grey zone, as Plaintiff has not presented any evidence of Defendant's negligence.

[9]But <u>see</u> <u>Piccoli v. Otis</u>, 2008 Phila. Ct. Com. Pl. LEXIS 286, at *12 (Phila. Ct. Com. Pl. Oct. 28, 2008) (granting summary judgment to defendant because, although plaintiff's expert testified that elevator misleveling incident was "result of inadequate maintenance by defendants" in light of prior service calls, expert could not determine reason for misalignment).

plaintiff in <u>Reyes</u> provided an expert opinion as to the existence of a dangerous condition. <u>Id.</u> at *5.  "Where an expert can state an injury would not normally occur absent negligence, identify several possible causes that are all within the defendant's responsibility, and rule out all other causes, his testimony can support a claim of negligence under the *res ipsa loquitur* standard."  <u>Id.</u> at 4.  Here, in contrast, Plaintiff has established no prior knowledge by Defendant of a misleveling problem with the elevator, no pattern of escalating complaints regarding the elevator, and no expert opinion.

The essence of Plaintiff's argument is that he has met his burden because misleveling is a malfunction that Defendant was contracted to avoid, and because misleveling only occurs when there is a malfunction of components that Defendant had a duty to inspect and maintain.  Doc. 22-2 at 13.  This position, if adopted, would make Defendant a guarantor that the elevator would never mislevel, which is not consistent with Pennsylvania law requiring proof of negligence.  Moreover, he fails to satisfy the first two elements of the doctrine of res ipsa loquitur upon which he relies to establish negligence -- that the incident is of a kind which ordinarily does not occur in the absence of negligence, and that other responsible causes, including the conduct of Plaintiff, are sufficiently eliminated by the evidence.  <u>See</u> <u>Quinby</u>, 907 A.2d at 1071.  Therefore, I conclude that Plaintiff cannot rely on the doctrine of res ipsa loquitur to establish Defendant's negligence.

### B. <u>Plaintiff Has Not Adduced Sufficient Evidence of Negligence</u>

In the absence of the evidentiary and inferential advantage provided by res ipsa loquitur, Plaintiff carries the burden of proving by a preponderance of the evidence that

Defendant breached its duty to conduct reasonable inspection and/or maintenance of the

elevator, and that there is a causal connection between the breach and Plaintiff's resulting

injury.  Krentz, 910 A.2d at 27; Evans, 168 A.2d at 576.  Defendant argues that Plaintiff

has failed to provide evidence that it failed to reasonably inspect or maintain the elevator,

particularly by failing to obtain an expert report indicating that the elevator

malfunctioned for a reason attributable to Defendant.  Doc. 18-1 at 4-7; Doc. 26 at 4-5.

Plaintiff counters that he has adduced sufficient evidence to survive summary judgment,

and that an expert report is not required because jurors have a fund of common

knowledge from which to reasonably conclude that his injuries were caused by

Defendant's negligence.  Doc. 22-2 at 13-15.

Under Pennsylvania law, expert testimony is employed to help jurors understand

issues and evidence that are outside of the average juror's normal realm of experience.

Young v. DOT, 744 A.2d 1276, 1278 (Pa. 2000).

> "[T]he employment of testimony of an expert rises from
> necessity, a necessity born of the fact that the subject matter
> of the inquiry is one involving special skill and training
> beyond the ken of the ordinary layman." . . . .  Conversely, "if
> all the primary facts can be accurately described to a jury and
> if the jury is as capable of comprehending and understanding
> such facts and drawing correct conclusions from them as are
> witnesses possessed of special training, experience or
> observation, then there is no need for the testimony of an
> expert."

Id. (quoting Reardon v. Meehan, 227 A.2d 667, 670 (Pa. 1967)).

The crux of the problem presented by Plaintiff's case is that an elevator can

mislevel without forewarning, which is confirmed by both the record evidence and the

misleveling cases reviewed.  Thus, a plaintiff alleging negligence on the part of a defendant under contract to inspect the elevator must show that "the elevator [was] in a defective or dangerous condition discoverable by reasonable inspection." Evans, 168 A.2d at 576.  Similarly, to establish breach of a contracted duty to maintain an elevator, a plaintiff must show that the defendant fell below a reasonable standard of care in identifying and maintaining the flawed component or components at fault for the elevator's malfunction.  Simply put, a mislevel does not necessarily imply negligence, and a defendant would need to discover, or be on reasonable notice of, what conditions or deficiencies existed at the time of the inspection or maintenance that should have alerted a prudent and reasonable elevator servicer that the elevator could mislevel.  Laysears, 1995 WL 568480, at *1.

To decide a misleveling case without the benefit of expert evidence, a juror would have to be able to understand whether a reasonable inspection would have discovered the conditions or deficiencies that caused the elevator not to level properly, or whether certain repair procedures were reasonable under the circumstances.  While a juror might be expected to understand, for example, that an elevator that misleveled during a servicer's inspection would put a reasonable servicer on notice of the need to conduct repairs, such juror would be unlikely to know what conditions or deficiencies cause an elevator to mislevel, what actions or maintenance would be required to discover those causes, or whether the actions of a particular elevator service provider constituted reasonable inspection and maintenance.  Cf. Colon v. Ashford Bucks Cty., LLC, No. 11-CV-1464, 2012 WL 5400062, at *4 (E.D. Pa. Nov. 6, 2012) (Sitarski, M.J.) (a reasonable

jury could infer, with or without expert witnesses testimony, that an obvious "deluge pouring through the elevator shafts was a visual 'signal,' or notice, of possible danger, which could have posed a real danger to elevator passengers").

Neither Pennsylvania courts, nor courts in this jurisdiction applying Pennsylvania law, have directly addressed the question whether expert testimony is required in the context of a negligence action arising from the misleveling of an elevator.[10]  However, cases involving similarly complex machines or devices provide useful guidance.  In Brandon v. Ryder Truck Rental, Inc., the plaintiff motorist alleged that a rental truck company failed in its duty to inspect and maintain a vehicle whose front wheel dislodged, causing the ensuing accident.  34 A.3d 104 (Pa. Super. Ct. 2011).  The Pennsylvania Superior Court held that the plaintiff required an expert witness to establish that the defect was discoverable through reasonable inspection and maintenance.  Id. at 110.  The court explained that in order to sustain his allegation, the plaintiff needed to show that a

---

[10]Courts in other jurisdictions have held that elevators are complex mechanical devices whose operation is outside the knowledge of a lay juror.  See, e.g., Dover Elev. Co. v. Swann, 638 A.2d 762, 774 (Md. 1994) (expert testimony necessary in elevator misleveling case because it "involved the complicated inner workings of [the] elevator['s] machinery which were outside the scope of the average layperson's common understanding and knowledge"); Paul v. Otis Elev. Co., No. 16A729834, 2017 WL 4921950, at *2 (Nev. Dist. Ct. Sep. 26, 2017) (expert testimony required because "[e]levators are complex pieces of machinery, and how they operate and how they should be maintained are matters outside of the realm of knowledge of lay jurors"); Mixon v. K&D Apartment Cmty. Owners & Managers, No. CV 14 835864, 2015 WL 13638707, at *4 (Ohio Com. Pl. Apr. 04, 2015) ("Because an elevator . . . is a complicated mechanical device, the maintenance of an elevator is outside the knowledge of a lay juror.  Plaintiffs are therefore required to present expert testimony establishing standard of care for an elevator maintenance company and [opinion whether the maintenance company] breach[ed] that standard.") (citation and internal quotation marks omitted).

defect or maintenance deficiency existed in the front wheel assembly, and that it would have been "discoverable in advance of the accident upon reasonable inspection." Id. Although a wheel clearly should not dislodge during the operation of a vehicle, the court concluded that the answer to these questions "are not within the range of the ordinary knowledge or experience of the average layperson," and that "absent the testimony of a qualified expert, a jury's verdict would be nothing more than conjecture." Id.

Similarly, in Rock Creek Lumber Co. v. Valley Machine Works, Ltd., the court held that expert testimony was required to establish negligence on the part of the company that installed and maintained a sawmill cutting system. No. 08-0967, 2010 WL 2891535, at *6 (M.D. Pa. July 21, 2010). The plaintiff argued that it did not need an expert to establish that the sawmill cutting system did not perform properly because anyone could see that wood exited the machine slowly and with damage. However, the court observed that the cutting system included multiple mechanical components. Id. at *1. In finding that an expert witness was required to establish negligence, the court explained that the "highly technical nature of the components" of the system required "an understanding of the standards applicable to software design, installation, systems integration, and assessing whether they were performed with the standard of care of software engineers and systems integration specialists," and that such understanding was outside the knowledge of the average lay person. Id. at *7. Other cases involving complex matters stand for the same proposition. See, e.g., Brown v. Hahnemann Univ. Hosp., 20 F. Supp. 3d 538, 542 (E.D. Pa. 2014) (general rule in Pennsylvania is that expert testimony is required to establish prima facie negligence in medical malpractice);

Dunlap v. Federal Signal Corp., 194 A.3d 1067, 1073 (Pa. Super. 2018) (where

firefighters alleged hearing loss due to loud siren, expert testimony was required to prove

that proposed alternative design would provide effective warning); Meyers v. LVD

Acquisitions, LLC, 2017 WL 1163056, at *3 (Pa. Super. Mar. 28, 2017) (expert

testimony was required to establish negligent design or maintenance of leaking water

cooler).

Elevators are similarly complex mechanical devices, as for example Mr. Huff

testified that an elevator can mislevel due to a problem with the contacts, relays, or

optical eye, Huff Dep. at 113, and Mr. Caperna testified that an elevator can mislevel on

one occasion and then work properly thereafter depending on factors such as the

temperature in the machine room, the humidity in the building, and the building voltage

to the motor generator.  Caperna Dep. at 79-80.  In short, the mechanics of how elevators

work, and the causes of why they might work improperly, lie outside the knowledge of

the average lay person and therefore require expert testimony.  See Young, 744 A.2d at

1278.  Similarly, lay persons have no knowledge of what constitutes appropriate

inspection or maintenance of elevators with reference to the Contract, industry standards,

and/or applicable state codes.[11]

---

[11]In arguing that he is not required to obtain an expert report, Plaintiff relies on
Merling v. Dep't of Transp., 468 A.2d 894 (Pa. Commw. 1983), in which the court found
that a lay witness could testify to the dilapidated condition of a roadway at the time of a
motor vehicle accident.  However, unlike the complicated mechanics of an elevator, the
dilapidated condition of a roadway, and the role that a dilapidated road can play in an
accident, are matters far more likely to be within the commonplace experience of a jury.
See Young, 744 A.2d at 1278 (expert testimony not required if jury can understand facts
and draw correct conclusions from them).

Moreover, although Plaintiff presented the Contract setting forth Defendant's responsibility to inspect and maintain the elevator, and the Maintenance Reports documenting Defendant's servicing of the Elevator for the period from July 27, 2017, through December 22, 2017, Plaintiff has presented no evidence by which a reasonable juror could conclude that Defendant's service and maintenance of the elevator was deficient or contrary to accepted practice in the elevator industry, nor do the Maintenance Reports memorialize any report or observation of a mis-alignment problem with the elevator.[12]  Contrary to Plaintiff's suggestion that it would be an "impossible burden" for him "to prove the specific fault or technical malfunction that caused the doors to open on that day while the unit was mis-leveled," Doc. 22 at 15, identifying the precise malfunction would not necessarily be required.  For example, an expert could opine as to whether Defendant's maintenance schedule and inspection practices would be expected to discover likely causes of an elevator mis-alignment, whether they satisfied the terms of the Contract, and whether they were consistent with the industry's standard practices and complied with Pennsylvania's elevator code.  The answers to questions such as these are beyond the knowledge of lay jurors, but are crucial for establishing whether Defendant breached its duty to conduct reasonable inspections and maintenance of the elevator, and

---

[12]As noted, <u>supra</u> n.5, in light of the briefing and Maintenance Reports, I conclude that the August 8 service call did not raise any issue as to the leveling of the elevator.  If Plaintiff were to rely on the door gibs, door button light, or door hanger rollers as putting a reasonable servicer on notice of a problem relating to the elevator's ability to level properly, Plaintiff would have had to elicit such evidence from Mr. Huff or Mr. Caperna or provide expert testimony to assist the jury in understanding the mechanisms involved.

if so, whether there is a causal connection between the breach and Plaintiff's resulting injury.

In holding that Plaintiff cannot meet his burden without expert evidence, I again observe that Plaintiff has presented no evidence that Defendant neglected to inspect or maintain the elevator, or of prior problems either with the elevator misleveling or with the components necessary for the elevator to level properly.  It is certainly conceivable that a misleveling case could go to the jury without expert evidence, for example in the case of a mechanic who observed the elevator mislevel and took no steps to repair it or to take the elevator out of service.  In the absence of evidence that jurors can fairly be expected to understand, Plaintiff here cannot proceed without expert evidence to explain to the jury what efforts by Defendant could reasonably have avoided the accident.

## IV.  **CONCLUSION**

Based on the foregoing, I conclude that Plaintiff has failed to meet his burden of producing evidence sufficient to establish a prima facie case of negligence as a matter of law.  Plaintiff cannot rely on the doctrine of res ipsa loquitur, and he has failed to adduce evidence, expert or otherwise, showing that Defendant failed to reasonably inspect or maintain the elevator.  Because no genuine dispute exists in this regard, Defendant is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(a).  Accordingly, Defendant's summary judgment motion will be granted.  An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CYRIL PYLE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| OTIS ELEVATOR COMPANY, et al. | : | NO.  19-4283 |

## **ORDER**

AND NOW, this  17th day of June, 2020, upon consideration of Defendant's

motion for summary judgment (Doc. 18), Plaintiff's response (Doc. 22), and Defendant's

reply (Doc. 26), and for the reasons explained in the accompanying Memorandum, IT IS

HEREBY ORDERED that Defendant's motion for summary judgment is GRANTED and

JUDGMENT IS ENTERED on behalf of Defendant, Otis Elevator Company, and against

Plaintiff, Cyril Pyle.

BY THE COURT:

/s/ ELIZABETH T. HEY

_____

ELIZABETH T. HEY, U.S.M.J.